```
                IN THE UNITED STATES DISTRICT COURT
                 FOR THE DISTRICT OF SOUTH CAROLINA
                         FLORENCE DIVISION

                                  )
UNITED STATES OF AMERICA,         )
                                  )
           Plaintiff,             )
                                  )
     vs.                          )    CRIMINAL NO
                                  )    4:15-CR-00513
RADION BULIMAGA,                  )
                                  )
           Defendant.             )
```

### SENTENCING MEMORANDUM AND REQUEST FOR VARIANCE

**COMES NOW**, undersigned counsel on behalf of Radion Bulimaga and files this Sentencing Memorandum and request for variance pursuant to the Federal Sentencing Guidelines, Title 18, United States Code, Section 3553, Rule 32 of The Federal Rules of Criminal Procedure, and Title 18, United States Code, Section 3661.

**A. OFFENSE INFORMATION**

Radion Bulimaga was recruited by a nefarious group of fraudsters who prey on young people from poor Baltic and Ukrainian countries such as Moldova and Russia. These young people are seeking a better life and are easy to convince that if they come to the U.S. on student or work visas they will be able to start a life in America with the money they can earn

1

from helping these criminals in their fraud schemes. The schemes are hatched by more sophisticated people who instruct young individuals such as Bulimaga to open bank accounts and deposit fraudulently obtained tax refunds in them on their behalf. As part of the process Mr. Bulimaga would agree to withdraw the amounts deposited for a minimal percentage. Some of the instructions on the withdrawals were to send the money to Russia to specific recipient as directed by the criminal masterminds. Somehow the Russian masterminds were able to steel through computer hacking or other methods, from H&R Block and Turbo tax systems, numerous American citizen names and personal information in order to carry out the tax fraud scheme. Mr. Bulimaga did not have anything to do with the theft of these names or their information or filing any tax forms to obtain the fraudulent tax refunds.

    Mr. Bulimaga wanted to change his life but not through criminal conduct so he withdrew from the offense and advised the masterminds and his co defendants that he was doing so. Though this is not enough for a defense of withdrawal at trial it is significant since he is the only one who decided to stop participating in the scheme. Additionally, as proof of his commitment to make his participation in the fraud right he has already started paying restitution. Mr. Bulimaga has deposited with the clerk of the court $3000 towards restitution and

intends to have another $3000 at sentencing. As far as can be determined he is the only one who has taken these two steps to show his extraordinary acceptance of responsibility and commitment to change. Further he has cooperated fully with the government and may receive credit for that cooperation in the form of a 5K1.1 motion.

### B. GUIDELINES APPLICABLE WITHOUT VARIANCE

The PSR notes that the guidelines in this case are base offense level 6 plus 8 additional points pursuant to USSG 2B1.1(A)(2) and 2B1.1(b)(1)(E). The 8 points are based on the value attached to Mr. Bulimaga's relevant conduct in the bank deposits and removal of $140,031.97 dollars. The PSR added two points, which are objected to in a separate filing pursuant to USSG 2B1.1(b)(10)(A). This provision states that if a defendant relocated or participated in relocating a fraudulent scheme to evade law enforcement an additional two points would be added to the base offense. Without this two point enhancement the base level would be 14 before any deductions for acceptance of responsibility or variance factors.

With two (2) points deducted for acceptance, (3 points are deducted if the offense level is 16 or above), the final base level would be 12. As a first offender the guidelines before any additional mitigation is applied would be 10-16 months in Zone C. This makes Mr. Bulimaga eligible for probation with community

3

confinement, incarceration or a split between the two. With additional mitigation factors discussed below the sentence to be imposed would clearly fall within the range of probation. (The variance requested is applicable based on cooperation and extraordinary acceptance of responsibility)[1]

**C. STATUTORY SENTENCING CONSIDERATIONS**

18 U.S.C. § 3553 requires that the following factors be considered in imposing a sentence including the sentencing guidelines:

1. *The nature and circumstances of the offense and the history and characteristics of the defendant. (3553(1)).*

Based on all the information received in this case, the nature and circumstances of the offense critically does not require an application of the determined sentencing guidelines. In fact the nature and circumstances of the offense and offender here, as applied to this specific offender, support a downward variance or departure to probation. Bulimaga was one of many young people enticed to participate in the offense. He removed himself from the offense before he was arrested, immediately cooperated and has started paying restitution. He has no prior convictions or arrests.

---

[1] If the two points for USSG 2B 1.1(b)(10)(A) are added the offense level would be 16. With three points for acceptance of responsibility applicable the final offense level without any departures or variance factors applied would be 13. The guidelines for this level are 12-18 months. With the application of 5K1.1 and/or variance factors the court can still consider a sentence of probation, house arrest or other form of non incarceration.

4

2. *The need for the sentence imposed (3553(2)) to:*

a) *To reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense.*

Clearly just punishment can be as effective with a lesser non incarceration sentence, particularly on first offenders. Mr. Bulimaga is a first offender who took significant and appropriate steps to rectify his wrong doing way before he was arrested by withdrawing from the offense, agreeing to cooperate and entering a timely plea.

After his plea he immediately began a restitution repayment effort. Radion Bulimaga represents the type of individual whose rehabilitation can be affected through probation. This would also adequately address the goals of punishment and retribution.

b) *To afford adequate deterrence for criminal conduct.*

A reduced sentence represents adequate deterrence for this Defendant. Mr. Bulimaga has been very cooperative with the government. There is no indication that he will commit any further crimes. Thus, incarceration will serve no additional deterrent effect on the actual circumstances of the offense and the condition of the offender.

c) *To protect the public from further crimes of the defendant.*

5

Alternatives to incarceration are of more value in this type of case than incarceration. There is no need to protect the public here as Mr. Bulimaga was not involved with the actual theft of tax records and identification information or in filing for the tax refunds. Further he is working full time and already paying restitution. He can realistically pay back the money that represents his participation in the offense.

d) **To *provide the defendant with needed education, vocational training, medical care, or other correctional treatment in the most effective manner.***

Mr. Bulimaga does not need any special care or education. He has his CDL license and is employed full time as a long distance truck driver.

e) ***The advisory guidelines are too harsh in this case and are therefore more than necessary to achieve the traditional goals of punishment.***

The heartland departure analysis is no longer the test for imposing a reasonable sentence where the Court does not apply the advisory guidelines. In this case with all the mitigating factors noted below a sentence of probation is not such a variance as to be unreasonable.

**D. POST BOOKER SENTENCING AS APPLIED TO MR. BULIMAGA**

It has been well established that in *United States v. Booker,* 128 S.Ct. 738 (2005), the Supreme Court held that

6

district courts must still consider the guideline range, 18 U.S.C. 3553(a)(4) and (5), but must also consider the other directives set forth in 3553(a). Thus, under *Booker,* courts must treat the guidelines as one of a number of factors in sentencing. Section 3553(a) requires courts to "impose sentence sufficient, **but not greater** than necessary, to comply with the purpose set forth in paragraph 2." Section 3553(a)(2) (emphasis added).

In cases in which the defendant's history and characteristics are positive, consideration of all 3553(a) factors might call for a sentence outside the guideline range (a departure, variance or both).

There is no way to compartmentalize individual characteristics. People are complex and so are the circumstances surrounding cause and effect relationships between a person's involvement in criminal activity and their background. The complexity of human nature cannot be offset by rigid guideline classifications. We must take defendants as we find them applying leniency when called for without regard to differences in sentencing that come from the condition of individual human characteristics. In Radion Bulimaga's case his individual circumstances and character warrant a sentence below the guidelines to probation for several reasons.

7

1. **COOPERATION**

Radion Bulimaga cooperated immediately with the government, has been debriefed and disclosed vital information necessary for the prosecution of the case he is involved with as well as other ongoing investigations and prosecutions. Should the government file a 5K1.1 motion this Court is free to consider any departure/variant sentence available including probation. If the government does not file a 5K1.1 motion, the Court is still not restricted in considering that information as a part of the 18 USC 3553 factors related to Bulimaga's character and commitment to rehabilitation and retribution to society which completely protect the public and are directly responsive to his criminal liability.(See 3553 (1)-(4)). (See also *U.S. v. Fernandez*, 443 F.3d 19 (2d Cir. 2006)("We agree that in formulating a reasonable sentence a sentencing judge must consider "the history and characteristics of the defendant"… and should take under advisement…the contention that a defendant made efforts to cooperate, even if those efforts did not yield a Government motion for a downward departure")).

2. **ADVANCE RESTITUTION**

Regardless of whether the government files a 5K1.1 motion, the defendant's cooperation by his efforts to start to pay, in advance, meaningful restitution, reflects extraordinary acceptance of responsibility.  See *United States v. Kimm,* 364

F.3d 1235 (11th Cir. 2004)(fraud case where court granted two level departure for super acceptance of responsibility in paying restitution by going into debt). Bulimaga's restitution efforts have shown immediate remorse and retribution. Extraordinary acceptance of responsibility is a factor the court can consider in reducing a sentence below the guidelines. "If the District Court determines the two level reduction for acceptance of responsibility inadequately addresses a defendant's restitution, the District Court may impose a reasonable sentence outside the guideline range."  In *United States v. Rogers*, 972 F.2d 489 (2nd Cir. 1992), this court also addressed the application and ability for a court to depart downward for exceptional acceptance of responsibility.  See *Rogers* at 493.  See; *United States v. LeRose*, 219 F.3d 335 (4th Cir. 2000)(This court has stated that "restitution, although taken into account in the guideline permitting a reduction for acceptance of responsibility [U.S.S.G. § 3E1.1, comment. (n.1(c))], can provide a basis for a departure when present to such an exceptional degree that it cannot be characterized as typical or 'usual.' Citing, *United States v. Hairston,* 96 F.3d 102, 108 (4th Cir.1996). The restitution being paid in Mr. Bulimaga's case is proportionate to his abilities in light of his age and his employment thus making it extraordinary to his circumstances.

9

### 3. POST OFFENSE REHABILITATION

Radion has taken the necessary steps to deal with his criminal conduct. He has been on bond for almost a year, working full time as a long distance truck driver. While working full time he has not only started paying restitution but at his own expense made every required court appearance from Seattle to South Carolina. Rehabilitation does not always have to be incarceration motivated, a program or treatment. Rehabilitation is conduct that is based on conscious decisions to be a law abiding citizen and to correct any wrongdoing with specific actions such as paying restitution and cooperation with law enforcement. Mr. Bulimaga has done just that.

Such an awareness and willingness of Radion Bulimaga to leave a former lifestyle behind can remove the case from the heartland of typical cases, thus constituting a valid basis for a less severe sentence than the guidelines may call for. Post offense rehabilitation can take many forms and is a reason for a departure or variant sentence. See *United States v. Brock*, 108 F.3d 31, 31 (4th Cir. 1997)(remanding "to permit the district court to consider whether the defendants rehabilitation efforts were exceptional and if so, whether departure is warranted"). The term extraordinary is not applicable to variance factors and both can be considered in light of Mr. Bulimaga's efforts to

10

cooperate, pay restitution as well as his withdrawal from the offense.

### 4. OTHER VARIANCE FACTORS TO CONSIDER

Mr. Bulimaga was a law abiding young man who made a bad mistake and used poor judgment. See for example *United States v. Hadash,* 408 F.3d 1080, 1084 (8th Cir. 2005)(Court departed 6 levels to probation because the defendant was a "law abiding citizen, who did an incredibly dumb thing" and said that the defendant "was not the type of defendant the guidelines section was designed to punish.").

Withdrawing from the offense conduct is another factor that can be considered in applying a downward variance to the sentencing guidelines. See *Gall v. United States*, 552 U.S. 38 (2007).

### 5. PROBATION IS A REASONABLE SENTENCE

Even if the court considers the applicable guidelines to be that which is noted in the PSR a sentence of probation is not unreasonable. The guidelines in the PSR result in a sentencing range of 15-21 months at offense level 14, the defendant recommends a level 12 range that results in 10-16 months; either range allows the court to consider a sentence of probation when all mitigation is applied to both departure and/or variance factors. (Both of these ranges are based on the application of two points for acceptance of responsibility applied to the

11

defendant's application of the offense level of 14 minus 2 which results in offense level 12 while the PSR applies level 17 minus 3 for acceptance of responsibility which equals level 14. Both of these levels are before any application of variance or departure factors).

As a first offender the bottom of the range of either level is a reasonable starting point. With additional mitigation applied for a 5K motion, Mr. Bulimaga's withdrawal from the offense before knowing there was an investigation and his early start on pleading guilty and paying restitution are ample grounds to sentence him to a period of probation. This would allow him to keep his job, continue his efforts to pay restitution and to show the public he has recognized his wrongdoing and wants to make it right. Incarceration is not a required element of punishment.

Mr. Bulimaga should be sentenced to probation and community service. This will aid him in continuing his path of retribution and remorse and give back something of value to the community he has offended.

It is recommended that Mr. Bulimaga be sentenced to three to five years probation and be required to do **200 hours of community service.** It is recommended that either the Salvation Army or United Way be the source of that community service program. The United Way and the Salvation Army, both have food

bank programs, as well as clothing drives, and are in constant need of volunteers to assist in the various charitable contributions that these agencies make to the community.(There are other programs as well should probation wish Mr. Bulimaga to complete any community service hours at any other organization located near his residence in Seattle, Washington).

The advantages of **probation and community service** without pay are that:

1. Mr. Bulimaga will be required to do work without pay for a good cause that should, in effect, have some therapeutic outcome that would enhance Mr. Bulimaga's awareness of his misdeeds in a concrete and constructive way.

2. The involved public and/or charitable agencies would receive much needed and valuable services for no charge.

3. The imposition of the requirement of work without pay would make Mr. Bulimaga more acceptable to the public in that the public would be more likely to feel that justice had been done.

**Probation is a reasonable** disposition in this case because:

1. It will maximize the rehabilitation and retribution of Mr. Bulimaga while at the same time vindicating the authority of the law and effectively protecting the public from future violations of the law through a period of controlled supervision.

2. It affirmatively promotes rehabilitation of Mr. Bulimaga under the direct jurisdiction and control of the court by maintaining employment and contact with the court.

3. Probation greatly reduces the financial cost to the public treasury of an effective correctional system. Seldom is there a case where probation can realistically be imposed. Past Attorney General Holder advocated for more alternatives to incarceration on non violent first

      offenders who did not present a danger to society as a leader or organizer of a criminal activity.

4. Probation in this case allows Mr. Bulimaga to repay his debt to society in the form of paying full restitution. To do this Mr. Bulimaga must continue to retain employment. The restitution in this case is reasonable and payable. Mr. Bulimaga has already paid $3000 (dollars) in restitution and is hoping to apply another $3000 (dollars) at sentencing.

The circumstances of this offense call for some temperance and a variant sentence. The collateral consequences of a felony conviction, probation, community service and possible deportation are adequate deterrents and punishment.[2] It is highly recommended that an alternative to incarceration be implemented. This will not cause a disparit outcome as it relates to the co defendants as none of them withdrew from the offense or even tried to pay any restitution in advance related to their individual criminal conduct.

**Wherefore, for the reasons stated herein, it is respectfully requested that this honorable court impose a sentence of probation with the special condition that Mr. Bulimaga provide American citizens in need, in his supervision location, 200 hours of community service in addition to continuing to pay reasonable payments on the restitution**

---

[2] In a recent decision from Eastern District of New York District Court Judge Block in Brooklyn, New York, May 24th, 2016 noted that collateral consequences from a felony conviction are significant, such as denial of government benefits, the right to vote, ineligibility for public housing, student loans and public financial assistance. See also *United States v. Thavaraja,* 740 F.3d 253 (2nd Cir. 2014)(where the circuit court recognized that deportation is a permissible 3553(a) variance factor. See id. at 262-63.

14

**remaining from his participation in the offense.** Though this sentencing recommendation is reasonable without any 5K1.1 motion it will be even more so should the government file this motion based on Mr. Bulimaga's cooperation.

                      Respectfully submitted,

                      /s/Marcia G. Shein
                      Counsel for Defendant
                      Georgia Bar No. 639820
                      Federal Bar No. 53667
                      2392 North Decatur Road
                      Decatur, Georgia 30033
                      (404) 633-3797
                      (404) 633-7980 (fax)
                      Marcia@msheinlaw.com

                      /s/Henry M. Anderson, Jr
                      Local Counsel for Defendant
                      South Carolina Bar No.05767
                      Henry M. (Hank) Anderson, Jr.
                      Anderson Law Firm, PA
                      265 W. Evans Street
                      Florence, SC  29501-3464
                      Phone: (843) 665-4300
                      Fax: (843) 665-5511
                      andersonlawfirm@bellsouth.net

## **CERTIFICATE OF SERVICE**

I hereby certify that I have this date electronically filed the above referenced document, which will be electronically delivered to Assistant United States Attorney, Marshall Austin at Matt.austin@usdoj.gov.

**Marshall Austin**
**US Attorneys Office**
**PO Box 876**
**Charleston, SC   29402**

This 1st day of June, 2016.

Respectfully submitted,

/s/Marcia G. Shein
Counsel for Defendant
Georgia Bar No. 639820
Federal Bar No. 53667
2392 North Decatur Road
Decatur, Georgia 30033
(404) 633-3797
(404) 633-7980 (fax)
Marcia@msheinlaw.com


/s/Henry M. Anderson, Jr
Local Counsel for Defendant
South Carolina Bar No.05767
Henry M. (Hank) Anderson, Jr.
Anderson Law Firm, PA
265 W. Evans Street
Florence, SC   29501-3464
Phone: (843) 665-4300
Fax: (843) 665-5511
andersonlawfirm@bellsouth.net

16